1998 SD 111

**Kathleen WAYRYNEN, Applicant and Appellee,**

v.

**Joe CLASS, Warden of the South Dakota Penitentiary, Appellant.**

No. 20378.

Supreme Court of South Dakota.

Argued Sept. 15, 1998.

Decided Nov. 10, 1998.

Jack Der Hagopian, Sioux Falls, for applicant and appellee.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, for appellant.

SABERS, Justice.

[¶ 1.] The State appeals a grant of habeas corpus relief to Kathleen Wayrynen based on ineffective assistance of counsel and violation of the protection against cruel and unusual punishment. We affirm the granting of habeas relief based on ineffective assistance of counsel only.

## FACTS

[¶ 2.] On August 2, 1991, Kathleen Wayrynen, accompanied by her foster father, Pastor Raymond Ensz, went to attorney John Wehde's office and told him about numerous fires she had started around the Huron area. She expressed her desire to confess. All of the fires occurred on July 21, 1991 and involved unoccupied structures including cars, a utility trailer, and a trash dumpster. The most serious fire was in the supply room of the Huron Middle School. Wehde represented Wayrynen previously on reckless driving and eluding charges, which charges arose from arrests made on the night of the fires.

[¶ 3.] Wehde contacted the police and verified that an investigation was being conducted into the fires, but that the police had not focused on a particular suspect. He then told Wayrynen she could either keep quiet and most likely nothing would happen or she could confess. Wayrynen was advised by Wehde of the seriousness of the charges and that incarceration was likely, but she was not informed of the maximum punishment. He suggested she consider her options and discuss the situation with her family and counselors. Wehde was aware Wayrynen had a history of depression. Wehde allowed Pastor Ensz to be present during the interview and only took one page of handwritten notes.

[¶ 4.] Wayrynen returned to Wehde's office on August 6, 1991 and informed him of her decision to confess. On the same day, Wehde contacted the state's attorney to arrange a meeting. He identified Wayrynen and stated she wanted to talk about the fires. Wayrynen and Wehde then went to the state's attorney's office where, after receiving Miranda warnings, Wayrynen confessed. At one point, Wehde assisted the police in questioning Wayrynen by drawing out additional information. No plea agreement had been discussed with the state's attorney prior to the confession.

[¶ 5.] Wayrynen made her first court appearance on the same day and was charged with two counts of third degree arson. At Wehde's request, she was sent to the Human Services Center at Yankton, South Dakota for a psychological evaluation which indicated she was competent to stand trial. Wayrynen was found to have some alcohol abuse problems, depression and a personality disorder. There was some indication that Wayrynen was minimizing her abilities.

[¶ 6.] An information was filed on August 9, 1991 charging Wayrynen with 13 counts of third degree arson and 3 counts of attempted third degree arson. She pled guilty on August 30, 1991 to 13 counts of third degree arson and 2 counts of attempted third degree arson. Wehde and the state's attorney had agreed to a recommendation of concurrent sentencing with some time suspended. A sentencing cap was not an option because the trial judges in the third circuit would not accept them.

[¶ 7.] The judge had been informed at the arraignment that Wayrynen had voluntarily confessed and cooperated with the authorities, but this was not reiterated at the sentencing hearing. Wayrynen was advised by the judge of her rights and told that the maximum sentence was 140 years. Wayrynen indicated she understood her rights and wished to plead guilty. The judge ignored the sentencing recommendation and sentenced Wayrynen to 5 years on each count, a total of 75 years, to be served consecutively.

[¶ 8.] The trial judge also notified the prison at Springfield by letter that each felony count was to be considered a separate transaction. The effect of this was to increase her parole eligibility from 9 years, 5 months to 19 years, 4 months by operation of law. Wehde received a copy of the letter, but took no action.

[¶ 9.] Wehde did not advise her of the possibility of requesting reconsideration of the sentence or permission to withdraw the plea. He also did not attempt to present evidence on proportionality. Wehde dis-

cussed an appeal with her, but predicted it would be unsuccessful. No direct appeal was made.

[¶ 10.] Wehde was subsequently suspended from the practice of law for unrelated matters.

[¶ 11.] Wayrynen filed a writ of habeas corpus on June 6, 1996. On December 9, 1997, the court granted habeas relief, finding that she received ineffective assistance of counsel and that her 75 year sentence was cruel and unusual punishment.

[¶ 12.] Before expiration of the thirty days allowed for filing under SDCL 21–27–18.1, the State sent a motion for certificate of probable cause to the Beadle County Clerk of Courts, but the motion was not filed. Wayrynen's habeas counsel received a copy of the motion on December 24, 1997. The State filed a motion on January 12, 1998 requesting leave of court to file a copy of the motion for certificate of probable cause. That motion was granted on January 22, 1998. The certificate of probable cause was issued on January 16, 1998.

## STANDARD OF REVIEW

[¶ 13.] Our standard of review for a habeas corpus appeal is well established.

> Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. On habeas review, the petitioner has the initial burden of proof. We review the habeas court's factual findings under the clearly erroneous standard.

*Lodermeier v. Class*, 1996 SD 134, ¶ 3, 555 N.W.2d 618, 621–22 (citing *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191 (citations omitted)).

[¶ 14.] **1. WHETHER THE STATE COMPLIED WITH THE FILING REQUIREMENT OF SDCL 21–27–18.1 NECESSARY FOR THIS COURT TO HAVE JURISDICTION.**

[¶ 15.] SDCL 21–27–18.1 states, in part:

> A final judgment or order entered under this chapter may not be reviewed by the Supreme Court of this state on appeal unless the *circuit judge who renders the* judgment or a justice of the Supreme Court issues a certificate of probable cause that an appealable issue exists. A motion seeking issuance of a certificate of probable cause shall be filed within thirty days from the date the final judgment or order is entered.

Wayrynen contends that the State failed to comply with the thirty day filing requirement and, therefore, this court lacks jurisdiction. The State's motion for certificate of probable cause was given to the Beadle County Clerk of Courts for filing and Wayrynen's habeas counsel received a copy on December 24, 1997. Due to a clerical error, the motion was not filed in her habeas file in the clerk of court's office. The State complied with the statutory requirements of SDCL 21–27–18.1 when it gave the motion to the Beadle County Clerk of Courts for filing. Wayrynen was not prejudiced or caught unaware because her counsel received a copy of the motion on December 24, 1997, before the thirty day period expired.

[¶ 16.] A filing oversight by the clerk of courts is insufficient to deprive this court of jurisdiction to hear this appeal. *See generally Uhlir v. Webb*, 1996 SD 5, ¶ 12, 541 N.W.2d 738, 740 (stating "a clerical error beyond the control of the party and his or her attorney should not result in a denial of a motion that has already been orally granted by the trial court"); *State ex rel. Aurora County v. Circuit Court*, 268 N.W.2d 607, 611 (S.D.1978) (stating "[a]lthough such requirements are necessary for the efficient functioning of the appellate court, the failure of the clerk or secretary to perform his duty does not [a]ffect the jurisdiction of the court"). "The appellant's failure to follow up his appeal * * * while it may be ground for dismissal, does not defeat the jurisdiction of the court or [a]ffect the computation of the period within which the appeal must be perfected; *nor does the failure of the clerk to do the acts required of him in connection with the appeal.*" *Id.* (quoting 4A C.J.S. Appeal and Error § 454).

**[¶ 17.] 2. WHETHER WAYRYNEN WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.**

We have adopted the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance of counsel claims. First, [the applicant] must prove that his trial counsel's performance was deficient. He must show that trial counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Secondly, he must show that the deficient performance "prejudiced the defense" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial[.]" The reasonableness of trial counsel's action is evaluated from his perspective at the time the alleged error occurred.

*Garritsen v. Leapley*, 541 N.W.2d 89, 93 (S.D.1995) (alterations in original) (citing *Mitchell v. Class*, 524 N.W.2d 860, 862 (S.D. 1994) (citations omitted)).

[¶ 18.] The habeas court found that Wehde provided ineffective assistance in approaching law enforcement and in responding to Wayrynen's 75 year sentence. It found a reasonable probability that the result would have been different had Wehde been effective. Specifically, the habeas court found that Wehde should have gotten clear permission from Wayrynen to identify her to the state's attorney and law enforcement or at least discussed with her the option of not immediately identifying her. Regarding the sentence, the habeas court found that Wehde should have moved for an opportunity to present proportionality evidence or attempted to make a threshold showing for reconsideration of the sentence.

Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel. *Loop*, 1996 SD 107 at ¶ 11, 554 N.W.2d at 191 (citing *Aliberti v. Solem*, 428 N.W.2d 638, 640 (S.D.1988)).

**[¶ 19.] A. DEFICIENT PERFORMANCE**

▬ [¶ 20.] Wayrynen went to Wehde for professional advice and guidance. Although Wehde warned Wayrynen of possible incarceration, he did not tell her that the maximum sentence she faced was 140 years. He did not even look it up. Wehde did not discuss with her the possibility of withholding her identity from law enforcement while he attempted to reach an agreement with the state's attorney. Instead, once she decided to confess, Wehde immediately identified Wayrynen to the state's attorney by telephone and stated that she wanted to talk about the fires. Wehde made no attempt at plea negotiations prior to arranging her confession. Despite Wehde's knowledge of the unavailability of a sentencing cap in that circuit, he made no attempt to limit the number of charges to be brought against her. With Wehde's assistance, she made a full confession without any advance protection.

▬ [¶ 21.] Wehde was ineffective in handling the plea. He clearly had an obligation to seek a limit on the number of charges filed against her prior to identifying her to the state's attorney. After that, it was too late to cure the mistake. "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Hawkman v. Parratt*, 661 F.2d 1161, 1165 (8thCir.1981) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980)). "When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences." *Hawkman*, 661 F.2d at 1170 (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5thCir.1981) (citations omitted)). Wehde did not adequately advise Wayrynen of her options. She was presented with only two options: do nothing or pled guilty to 13 counts of arson and 2 counts of attempted arson. "A guilty plea must represent the informed, self-determined

choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options." *Hawkman,* 661 F.2d at 1170 (citing *United States v. Cannon,* 553 F.2d 1052, 1056 (7thCir.1977)).

### [¶ 22.] B. PREJUDICE

[¶ 23.] "Prejudice exists when there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Petrilli v. Leapley,* 491 N.W.2d 79, 85 (S.D. 1992) (citations omitted). It is clear that she was prejudiced by Wehde's deficient performance. Once Wehde identified her without a prior agreement with the state's attorney limiting the charges, her fate was decided. Any bargaining advantage she had was lost once law enforcement had her confession. The state's attorney involved in the case acknowledged at the habeas hearing that, based on the evidence the State had prior to the confession, she would have entertained a charge concession had she been approached by Wehde.

[¶ 24.] Wayrynen was prejudiced because there is a reasonable probability that but for Wehde's deficient performance, she would not have pled guilty to 13 counts of arson and 2 counts of attempted arson. She was clearly prejudiced by Wehde's failure to seek a limit on the number of charges brought against her. Although Wehde eventually reached an agreement with the state's attorney for a sentencing recommendation, the sentencing judge was not bound by that recommendation. Once she pled guilty to 13 counts of arson and 2 counts of attempted arson, she was exposed to a possible 140 year prison term. Wehde's failure to seek a plea agreement prior to the confession, under these circumstances, constitutes ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[¶ 25.] In view of our disposition of Issue 2, we need not discuss whether Wayrynen's 75 year sentence constitutes cruel and unusual punishment.

### CONCLUSION

[¶ 26.] Wayrynen established ineffective assistance of counsel under *Strickland* and we affirm the granting of habeas relief.

[¶ 27.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.